## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CRESTWOOD MEMBRANES, INC.,** | : | |
| **d/b/a i2M,** | : | |
| | : | |
| **Plaintiff,** | : | **3:15-CV-537** |
| **v.** | : | **(JUDGE MARIANI)** |
| | : | |
| **CONSTANT SERVICES, INC.** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I. INTRODUCTION

On March 17, 2015, Plaintiff Crestwood Membranes, Inc., doing business as and hereinafter referred to as "i2M," initiated this action by filing its Complaint (Doc. 1) against Defendant Constant Services, Inc. ("Constant Services"). The Complaint alleges four causes of action: Count 1 "Copyright Infringement;" Count 2 "Breach of Contract;" Count 3 "Breach of Warranty;" and Count 4 "Negligence in Performance of Contract." (Doc. 1 at 7-8). On May 18, 2015, Constant Services filed a Motion to Dismiss (Doc. 11), which seeks only the dismissal of 1) i2M's demand for consequential damages; 2) i2M's demand for injunctive/equitable relief; 3) i2M's demand for attorney's fees and costs; and 4) i2M's negligence claim (Count 4). (Doc. 11, Ex. 1). The motion is briefed and is ripe for decision. For the reasons set forth below, the Court will deny Constant Services' motion.

### II. FACTUAL ALLEGATIONS

Plaintiff's Complaint contains the following factual allegations:

On May 13, 2009, i2M executed an Asset Purchase Agreement pursuant to which it purchased the assets of HPG International, Inc. ("HPG"), including all of HPG's right, title, and interest in and to HPG's intellectual property rights. (Doc. 1 at ¶ 6). These rights included the intellectual property rights in "Cobblestone" and "Galaxy Water," both two-dimensional artworks for pool liners; these artworks are each registered with the United States Register of Copyrights. (*Id.* at ¶ 7).

Constant Services and i2M entered into an arrangement under which Constant Services stored i2M cylinders bearing the copyrighted "Cobblestone" wall design and a single i2M cylinder bearing the copyrighted "Galaxy Water" floor design; Constant Services was to use the stored cylinders when filling orders placed by i2M to print those designs on i2M vinyl swimming pool liner film, which i2M offered for sale to its customers. (*Id.* at ¶ 8).

In 2014, i2M learned that Constant Services infringed i2M's copyright in the designs by using the stored i2M cylinders to produce printed swimming pool liner film for Constant Services' account; i2M alleges that Constant Services sold this imprinted film to Constant Services' own customers, such as Trevi. (*Id.* at ¶ 10). Plaintiff alleges that Constant Services did not have authorization, permission, or license to use the i2M's copyrighted designs for its own account or for its own customers and that i2M did not acquiesce in this alleged practice. (*Id.* at ¶¶ 9, 11). After i2M learned of the alleged infringement of its copyrighted designs, i2M demanded that Constant Services return the

2

i2M cylinders bearing those designs; i2M alleges that Constant Services returned the cylinders "[a]fter much delay." (Id. at ¶ 13).

Constant Services has allegedly refused to disclose the number of yards of vinyl swimming pool liner film bearing the copyrighted designs that Constant Services printed for its own account and for sale to its own customers, (Doc. 1 at ¶ 14), but i2M estimates the number at 496,776 yards, representing a lost revenue of $1,765,279 to i2M, (id. at ¶ 15). After subtracting costs, i2M estimates that it has suffered damages of at least $484,158 from Constant Services' alleged infringement of the designs. (Id. at ¶ 16). i2M further alleges that it reasonably fears that Constant Services will continue to infringe its copyright in the future. (Id. at ¶ 17).

An i2M customer has allegedly complained to i2M that it has experienced fading of the color of an i2M swimming pool liner film, which was printed for i2M by Constant Services. (Id. at ¶ 18). According to i2M, it has ruled out over-chlorination as a cause of this particular incident of fading and, based on its analysis of this fading problem, has concluded that the cause is Constant Services' failure to follow the specifications for printing services. (Id. at ¶¶ 19-20). i2M has made refund payments to this customer totaling $75,000 to the date of the Complaint. i2M alleges that it anticipates additional refund payments will be required and loss of good will incurred as the defective material sees more filed exposure. (Doc. 1 at ¶¶ 22-23).

3

Three i2M customers have complained since 2013 that they have experienced seam separation issues with i2M swimming pool liner film printed by Constant Services; the seams do not hold under stress. (*Id*. at ¶ 24). i2M tested the same film that was unprinted and found that the seams held. (*Id*. at ¶ 25). i2M has analyzed the seam separation problem and, based on that analysis, has concluded that its cause is Constant Services' alleged failure to follow standard protocol and properly manage the ink/film properties, which results in the ink layer cohesively failing. (*Id*. at ¶ 26). i2M has issued credits totaling approximately $500,000 as of the date of the Complaint as a result of the seam separation problem. (*Id*. at ¶ 27). i2M alleges that it anticipates additional customer credits will be required and additional damages incurred. (*Id*. at ¶¶ 28-29).

### III. STANDARD OF REVIEW

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level."

4

*Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013)

(internal citations and quotation marks omitted). A court "take[s] as true all the factual

allegations in the Complaint and the reasonable inferences that can be drawn from those

facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v.*

*Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation

marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to
> determine the sufficiency of a complaint: First, the court must take note of the
> elements a plaintiff must plead to state a claim. Second, the court should
> identify allegations that, because they are no more than conclusions, are not
> entitled to the assumption of truth. Finally, where there are well-pleaded
> factual allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged – but it has not show[n] – that the

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks

omitted). This "plausibility" determination will be a "context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court

must permit a curative amendment unless such an amendment would be inequitable or

futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

5

[E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## IV. ANALYSIS

Constant Services' Motion to Dismiss (Doc. 11) seeks the dismissal of i2M's negligence claim (Count 4) in its entirety and also requests that the Court dismiss, or, more aptly, strike, three of Plaintiff's demands for relief.  Those demands are 1) i2M's demand for consequential damages; 2) i2M's demand for injunctive/equitable relief; and 3) i2M's demand for attorney's fees and costs.  The Court will begin with the request for dismissal of Count 4, the most meritorious request in Defendant's Motion, before addressing whether certain demands for relief must be stricken from the Complaint.

### A.  Gist of the Action Doctrine does not Bar Plaintiff's Negligence Claim

Constant Services asks the Court to dismiss Plaintiff's cause of action for negligent performance of the contract (Count 4) as barred by Pennsylvania's "gist of the action" doctrine.  i2M's claim is based on allegations that customers have reported fading and seam separation issues with i2M swimming pool liner film printed for i2M by Constant Services and that i2M believes that Constant Services is the cause of these issues.  (*See* Compl., Doc. 1 at ¶¶ 18-20, 24-26).  i2M goes on to alleged that Constant Services owed it a duty to perform the parties' agreements in a non-negligent manner, (*id.* at ¶46), and that Constant Services failed to perform those agreements in such a manner, "causing vinyl swimming

6

pool liner film printed by Constant Services for i2M to fade or experience seam separation

problems," (*id*. at ¶ 47).  In support of its request for dismissal of Count 4, Constant Services

argues that "Plaintiff's negligence action mimics its breach of contract action" and that "any

contracts/agreements between Plaintiff and [Constant Services] are not merely collateral to

Plaintiff's tort claim[;] rather they are at the heart of its tort claim and inextricably intertwined

therewith."  (Br. in Supp. of Def.'s Mot. to Dismiss, Doc. 13 at 10-11).

> The gist of the action doctrine

> provides that an alleged tort claim against a party to a contract, based on the
> party's actions undertaken in the course of carrying out a contractual
> agreement, is barred when the gist or gravamen of the cause of action stated
> in the complaint, although sounding in tort, is, in actually a claim against the
> party for breach of its contractual obligations.

*Bruno v. Erie Ins. Co.*, 106 A.3d 48 (Pa. 2014).  The doctrine has a long and somewhat

muddled history in the Commonwealth, as related at length by the Pennsylvania Supreme

Court in the recent case *Bruno v. Erie Insurance Company*, 106 A.3d at 60-68.  Out of this

history, two guiding principles with respect to the application of the gist of the action doctrine

can be distilled and are laid out by the Pennsylvania Supreme Court in *Bruno*.  First,

> [i]f the facts of a particular claim establish that the duty breached is one
> created by the parties by the terms of their contract – *i.e.*, a specific promise
> to do something that a party would not ordinarily have been obligated to do
> but for the existence of the contract – then the claim is to be viewed as one
> for breach of contract.  If, however, the facts establish that the claim involves
> the defendant's violation of a broader social duty owed to all individuals,
> which is imposed by the law of torts and, hence, exists regardless of the
> contract, then it must be regarded as a tort.

*Id.* at 68 (internal citation omitted). Thus, the Pennsylvania Supreme Court set up a "duty-based demarcation" for deciding whether or not the gist of the action doctrine bars a particular tort claim, reaffirming this distinction "as the touchstone standard for ascertaining the true gist or gravamen of a claim pled by a plaintiff in a civil complaint." *Id.* at 69.

The Pennsylvania Supreme Court in *Bruno* then went on to add an important corollary to this framing of the gist of the action standard, setting out the second guiding principle of the opinion. The highest court in the Commonwealth "has long recognized that a party to a contract may be found liable in tort for negligently performing contractual obligations and thereby causing injury or other harm to the contracting party." *Id.* at 69. As a consequence,

> a negligence claim based on the actions of a contracting party in performing contractual obligations is not viewed as an action on the underlying contract itself, since it is not founded on the breach of any of the specific executory promises which comprise the contract. Instead, the contract is regarded merely as the vehicle, or mechanism, which established the relationship between the parties, during which the tort of negligence was committed.

*Id.* at 70.

Read as a whole, *Bruno* instructs trial courts applying the gist of the action doctrine to a plaintiff's complaint, as Constant Services asks this Court to do here, to determine whether the tort action alleged in the complaint is founded on the breach of a specific promise that forms all or part of the contract between the parties or whether the tort action is instead based on actions of the contracting party in performing its contractual obligations. If the former, the tort action is barred by the gist of the action doctrine; if the latter, the tort

action may proceed.  Once so distilled, application of the doctrine to the case at bar is an

uncomplicated exercise.  i2M has alleged an "arrangement" between itself and Constant

Services, under which Constant Services printed i2M-owned designs on vinyl swimming

pool liner film.  (Compl., Doc. 1 at ¶ 8).  It has further alleged that customers have reported

fading and seam separation issues with i2M swimming pool liner film printed for i2M by

Constant Services and that i2M believes that Constant Services is the cause of these

issues.  (*Id.* at ¶¶ 18-20, 24-26).  Taking i2M's well-pleaded factual allegations as true and

drawing all reasonable inferences in its favor, i2M has adequately stated a tort claim based

on Constant Services' alleged negligent actions in performing its contractual obligations.

Indeed, the possibility that a contracting party could be negligent in carrying out the services

contracted for was explicitly contemplated by the *Bruno* Court, which relied on past cases

such as *Zell v. Arnold*, 2 Pen. & W. 292, 1830 WL 3261 (Pa. 1830), which the *Bruno* Court

describes as finding an "action to be in tort since it was for breach of the defendant's duty to

perform, in a 'workmanly manner,' construction activities specified by the construction

contract," and *Bloomberg Mills v. Sordoni*, 164 A.2d 201 (1960), which the *Bruno* Court

describes as "finding evidence sufficient for jury to have concluded architect was negligent

in failing to exercise reasonable care in performance of duties imposed by design contract."

*Bruno*, 106 A.3d at 69-70.

   While discovery or trial might prove that Constant Services cannot be held liable in

tort, the Court cannot so determine at this early stage of the litigation.  *See Lebish v.*

*Whitehall Manor Inc.*, 57 Pa. D. & C.4th 247, 250-51 (Com. Pl. 2002) (allowing the plaintiffs to proceed on "both [contractual and tort-based] theories of liability because it [was] premature to classify the gist of this suit" at the demurrer stage). Constant Services' Motion to Dismiss will be denied with respect to Count 4.

## B. Plaintiff's Demands for Relief Need Not be Stricken

Before addressing the specific demands that Constant Services wishes to dismiss, the Court notes that "it is generally inappropriate for the Court to limit the remedies available to Plaintiffs on a motion to dismiss and [ ] it is preferable to assess the availability of various remedies after liability is established." *Dicicco v. Citizens Fin. Grp., Inc.*, No. CV 15-267, 2015 WL 5302767, at *10 (E.D. Pa. Sept. 10, 2015). This principle finds support in Federal Rule of Civil Procedure 54(c), which provides that every "final judgment [other than a default judgment] should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Thus, by arguing that 1) "Plaintiff fails to state facts sufficient to sustain a demand for consequential damages;" 2) "Plaintiff fails to state facts sufficient to sustain a demand for costs and attorney's fees;" and 3) "Plaintiff fails to state facts sufficient to sustain a demand for injunctive relief," (Doc. 11 at ¶¶ 16-18), Defense Counsel has engaged the Court in an essentially futile exercise.

> Because Rule 54(c) directs courts to "grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings," it makes little sense to require detailed factual allegations to support a demand for certain damages when such damages may ultimately be awarded even if they were never pled in the complaint.

10

*Charles v. Front Royal Volunteer Fire & Rescue Dep't, Inc.*, 21 F. Supp. 3d 620, 631-32 (W.D. Va. 2014) (some internal quotation and citation omitted).  With these principles in mind, the Court now turns to Constant Services' Motion.

### 1. Plaintiff's Demand for Injunctive/Equitable Relief

i2M requests "[a] permanent injunction to prevent future wrongful conduct." (Compl., Doc. 1 at 10).  Despite recognizing that the nature of the injunction i2M seeks is *permanent* rather than *preliminary*, Constant Services inexplicably argues that granting a permanent injunction at this time would be premature and that the Court should thus evaluate the demand "as a request for a preliminary injunction." (*Id*. at 7, n.1).  Constant Services goes on to argue that i2M has not met the burden for establishing that a preliminary injunction is warranted and that i2M's "remedies, if any, are strictly monetary damages."

A fair reading of the Complaint makes clear that i2M has not prayed for preliminary injunctive relief in its Complaint; nor has it filed a separate motion for preliminary injunctive relief.  In other words, i2M is not asking the Court to do *anything* with respect to an injunction, of any type, at this stage of the proceedings.  Instead, i2M has simply requested a permanent injunction as a possible remedy for the harm alleged by its Complaint.  If i2M were to succeed on the merits of some or all of its allegations, a permanent injunction may be an appropriate form of relief.  "Since this would occur at the end of litigation, it is inappropriate for the Court to limit the remedies available to Plaintiff, and [its] request for

permanent injunctive relief will not be stricken from the Complaint." *Singleton v. Medearis*, No. 09-CV-1423, 2009 WL 3497773, at *7 (E.D. Pa. Oct. 28, 2009).

Furthermore, the Court wishes to note for the benefit of Constant Services that among the remedies available for breach of contract, a cause of action properly pleaded by i2M, is permanent injunctive relief. *See Dicicco*, 2015 WL 5302767 at *9 (Under Pennsylvania law, "a court may issue a permanent injunction to prevent an ongoing breach of contract that cannot be adequately compensated by monetary damages."). Such a remedy is also available for infringements of copyrights, another cause of action properly pleaded by i2M; the Copyright Act explicitly provides that "[a]ny court having jurisdiction of a civil action arising under this title may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C.A. § 502(a).

### 2. *Plaintiff's Demand for Consequential Damages*

Constant Services also requests that the Court "strike or dismiss all references and request for consequential damages from the Complaint." (Doc. 13 at 6). However, consequential damages are specifically authorized by the Copyright Act. *See* 17. U.S.C. § 504(b) (copyright owner is entitled to actual damages). Consequential damages are also a recognized remedy for breach of contract. *See Cresci Const. Servs., Inc. v. Martin*, 64 A.3d 254, 264 n.15 (Pa. Super. Ct. 2013) ("Consequential damages are generally understood to be other damages which naturally and proximately flow from the breach of contract.") (citing

12

*AM/PM Franchise Ass'n v. Atlantic Richfield Co.*, 584 A.2d 915, 920 (Pa. 1990). While Defendant is correct that i2M will need to prove that consequential damages "were reasonably foreseeable and within the contemplation of the parties at the time they made the contract," to recover consequential damages for breach of contract (Doc. 13 at 5), federal pleading standards simply do not require i2M to prove, in its Complaint, its entitlement to damages for properly stated causes of action.

### 3. Plaintiff's Demand for Costs and Attorney's Fees

Constant Services requests that i2M's demand for attorney's fees and costs be dismissed with prejudice. (Doc. 13 at 7). According to Constant Services, "Pennsylvania law does not provide for the recovery of attorney's fees and costs to a plaintiff under the causes of action pleaded in the Complaint." (*Id*. at 6). Constant Services goes on to argue that Plaintiff has not adequately alleged that the contract between the parties requires payment of attorney's fees and costs or that any other facts pleaded by i2M support departing from the general rule that each party is responsible for the costs of its own suit. (*Id.* at 7). The Court will not strike i2M's demand for attorney's fees and costs. First, such an award is explicitly authorized by the Copyright Act should i2M prevail on its copyright infringement cause of action. *See* 17 U.S.C.A. § 505 ("In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States . . . . Except as otherwise provided . . ., the court may also award a reasonable attorney's fee to the prevailing party as part of the costs."). Second, absent the

13

Court's ability to review the contract at issue, it cannot determine whether it contains any provision evidencing and agreement that Constant Services would pay i2M's attorney's fees and court costs.

### V. CONCLUSION

For the foregoing reasons, the Court will deny Defendant's Motion to Dismiss (Doc. 11). A separate Order follows.

Robert D. Mariani
United States District Judge