THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CRESTWOOD MEMBRANES, INC., :
:
       Plaintiff, :
v. : 3:15-CV-537
: (JUDGE MARIANI)
CONSTANT SERVICES, INC., :
:
       Defendant. :

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

Presently before the Court is Magistrate Judge Carlson's Report and Recommendation ("R&R"), (Doc. 96), on Defendant's Motion for Summary Judgment, (Doc. 56). The subject of the R&R is a lawsuit that began in March of 2017, when Plaintiff, Crestwood Membranes, Inc., d/b/a i2M ("i2M"), filed a Complaint against Defendant, Constant Services, Inc. ("CSI"). The Complaint stems from a business relationship in the pool liner industry and alleges four causes of action: Count I, "Copyright Infringement;" Count II, "Breach of Contract;" Count III, "Breach of Warranty;" and Count IV, "Negligence in Performance of Contract." (Doc. 1 at ¶¶ 30-48).

Previously, i2M moved for summary judgment on the copyright infringement claim. (Doc. 23). In a separate R&R not currently before the Court, Magistrate Judge Carlson recommended denying i2M's motion on the basis that disputes of fact remain about the availability of certain defenses that may insulate CSI from liability. (Doc. 95). Over i2M's

objections, this Court adopted the R&R in full and denied i2M's Motion for Summary Judgment. (Doc. 104).

The subject of the R&R currently before this Court is CSI's Motion for Summary Judgment, (Doc. 56). In its Motion, CSI moved for summary judgment on all four of i2M's claims. The R&R made two recommendations concerning CSI's Motion. First, consistent with the prior R&R, the R&R recommended denying CSI's Motion as it concerns the copyright infringement claim. (Doc. 96 at 28). Neither party has objected to this recommendation, and the Court will adopt it. Second, after finding that i2M's filings failed to comply with Local Rule 56.1, the R&R recommended that this Court strike i2M's Response to CSI's Motion for Summary Judgment and order i2M to file a new response that complies with the local rules. (*Id*. at 29). Both parties have objected to this recommendation. Specifically, i2M has denied that it did not comply with Local Rule 56.1, and CSI has objected to giving i2M a "second bite at the apple."

While the R&R correctly points out that it is in this Court's discretion to take such a course of action, the Court notes that i2M has objected to being given such an opportunity. (Doc. 99 at 1). Thus, the Court will not adopt this recommendation, but instead resolve the remainder of CSI's motion on the parties' filings. For the reasons that follow, the Court will grant in part and deny in part CSI's Motion for Summary Judgment.

2

## II. STATEMENT OF UNDISPUTED FACTS

In accordance with Local Rule 56.1, CSI submitted a Statement of Material Facts in

Support of its Motion for Summary Judgment, (Doc. 57), as to which it contends that there is

no genuine dispute for trial. Despite its arguments to the contrary, the R&R correctly

conclude that i2M's Response to CSI's Statement of Material Facts, (Doc. 72), did not

comply with Local Rule 56.1. Although i2M cited to various sections of deposition testimony

to support its averments, it failed to either attach any of those depositions to its Response or

its Brief in Opposition, or inform the Court where those depositions could be found in the

record. In an attempt to resolve this issue, the Court issued an Order with the following

instructions:

> Plaintiff shall, within five (5) days of this Order, file with the Court a document
> which identifies, by docket number and page, the location of the material it
> cited within its Statement of Material Facts, (Doc. 72). To be clear, Plaintiff
> **shall not** file the depositions it relied on, but shall identify where in the record,
> as the record now stands, the evidence it relied on can be found by the Court.
> Any failure to timely comply with this Order will cause the facts asserted in
> Defendant's Statement of Material Facts, (Doc. 57), which Plaintiff's filing
> purported to controvert, to be deemed admitted.

(Doc. 105) (emphasis original).

Nevertheless, i2M disregarded this Court's instructions and instead filed a new

Response, (Doc. 106). This new Response admitted previously denied statements, denied

previously admitted statements, and was accompanied by depositions which i2M relied on

but which were not previously found in the record. Accordingly, in resolving the instant

Motion, the Court has disregarded i2M's attempt, without leave of the Court, to supplement

3

the record. Consequently, the Court has deemed admitted any statement in i2M's original

Response, (Doc. 72), which does not rely by citation on evidence in the record at the time

that the briefing on the summary judgment motion was completed. With that in mind, the

following facts are undisputed unless noted otherwise:[1]

CSI is a printing company that specializes in printing on flexible PVC plastics, such

as vinyl pool liners. (Doc. 57 at ¶¶ 1-2). CSI's customers provide CSI with the material to

print on and CSI applies ink to that material. (*Id.* at ¶ 5). CSI, however, does not

manufacture any of the materials it prints on. (*Id.*). i2M, one of CSI's customers, does

manufactures pool liner vinyl. (*Id.* at ¶¶ 16, 50, 90, 104).[2] When a pool liner customer

placed an order for vinyl from i2M, i2M would send vinyl to CSI and CSI would print patterns

on it for i2M. (*Id.* at ¶¶ 5, 40, 45, 50, 56, 58, 104; Doc. 72 at 58).[3]

Eventually, end user customers complained that the pool liners' seams would

separate and that patterns would fade. (Doc. 57 at ¶¶ 40, 82). Christopher Hackett, i2M's

owner, testified that the seam separation and fading issues were a result of CSI's printing

practices. (*Id.* at ¶¶ 15, 30, 82). Despite this contention, there was a history of CSI

---

[1] Because the Court is adopting the R&R's recommendation to deny CSI's Motion for Summary Judgment as it pertains to the copyright infringement claim, the Court does not here recite the facts that only concern that claim.

[2] Although i2M contested the factual assertions found in paragraph 50 of CSI's Statement of Material Facts, i2M failed to cite any facts found in the unsupplemented record to support its contention that there exists a genuine issue to be tried. (Doc. 72 at ¶ 50; Doc. 105; Doc. 106 at ¶ 50). Thus, the Court has deemed this fact admitted. *See* Local Rule 56.1.

[3] Although i2M contested the factual assertions found in paragraph 56 of CSI's Statement of Material Facts, i2M failed to cite any facts found in the unsupplemented record to support its contention that there exists a genuine issue to be tried. (Doc. 72 at ¶ 56; Doc. 105; Doc. 106 at ¶ 56). Thus, the Court has deemed this fact admitted. *See* Local Rule 56.1.

complaining about the quality of vinyl that i2M provided for to it for printing. (*Id.* at ¶¶ 84-87).

## III. STANDARD OF REVIEW

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "As to materiality, . . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should

5

be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912, 113 S. Ct. 1262, 122 L. Ed. 2d 659 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris,* 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## IV. ANALYSIS

CSI has moved for summary judgment on i2M's claims for breach of contract, breach of implied warranties, and negligent performance of a contract. Specifically, CSI argues that judgment should be entered in its favor on all of the claims because there are no genuine

disputes of material fact for trial, the negligent performance of a contract claim is barred by

the gist of the action doctrine, and the implied warranty claim fails because CSI is not a

merchant or seller of goods.  The Court will address each of CSI's arguments in turn.

## A. Disputes of Material Facts

CSI argues that three of i2M's claims are based on the same underlying allegation,

namely that CSI's printing on i2M supplied vinyl caused the printed patterns to fade and

seams to separate.  (Doc. 61 at 15).  CSI then argues that all of these claims fail for the

same reason: there is insufficient proof that the problems with the vinyl were caused by CSI.

(*Id.* at 15-16).  i2M's response, in full, is as follows:

> CSI's argument that it is entitled to summary judgment on i2M's fading and
> seam separation claims borders on the absurd. The record is replete with
> evidence supporting those claims, including the expert report of Rodney Sosa
> demonstrating that CSI is solely responsible for those failures. The most CSI
> can say is that there is a genuine issue of material fact regarding those
> claims. That is grounds for denying, not granting, summary judgment to CSI.

(Doc. 71 at 4).

As an initial matter, the Court notes that i2M's response contains no citations to any

authority or even to the record.[4]  Although i2M asserts that there are disputes of fact, it

neglects to tell the Court where any evidence of those disputes may be found.

---

[4] i2M's reference to an expert report was not a citation to the record.  As the R&R observed, i2M
failed to put the expert report of record. (Doc. 96 at 24).  In its objections, i2M explained that the expert
report was deemed "confidential" by the parties, and thus i2M did not put it of record. (Doc. 99 at 8).
Ignoring the fact that i2M could easily have filed the expert report under seal, it is elementary that the Court
cannot consider material that is not before it.  Further, contrary to what i2M suggests, it is not the Court's
responsibility to request the materials that i2M relied on.

Nevertheless, in evaluating the merits of CSI's arguments, the Court finds there are disputes of fact in the record that make entry of summary judgment on this basis improper.

As CSI admits, "[w]ith regard to issues of fading and seam separation, Mr. Hackett testified that it was CSI's printing practices, and them alone, that led to those issues for end use customers." (Doc. 57 at ¶ 82). Indeed, Mr. Hackett testified that "[b]ased on the third-party testing we have done, based on the experts we have in-house," i2M determined that the seam separation and fading issues were the result of CSI's printing. (Doc. 57-3 at 33-34). CSI goes on to argue that this contention is otherwise unsupported in the record and that the problem was actually due to i2M's vinyl. (Doc. 57 at ¶¶ 83-87). In essence, however, this is an attempt by CSI to get this Court to make a credibility determination as to the testimony of Mr. Hackett and weigh the evidence. But, as this Court has often noted, on summary judgment "'the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.'" *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)); see also *Anderson*, 477 U.S. at 255. Consequently, the Court will deny CSI's Motion for Summary Judgment on this basis.

## B. Gist of the Action Doctrine

Next, CSI argues that the gist of the action doctrine bars i2M's claim for negligent performance of a contract. (Doc. 61 at 10). The gist of the action doctrine

8

provides that an alleged tort claim against a party to a contract, based on the party's actions undertaken in the course of carrying out a contractual agreement, is barred when the gist or gravamen of the cause of action stated in the complaint, although sounding in tort, is, in actually a claim against the party for breach of its contractual obligations.

*Bruno v. Erie Ins. Co.*, 106 A.3d 48, 53 (Pa. 2014) (footnotes omitted). The doctrine has a

long and somewhat muddled history in the Commonwealth, as related at length by the

Pennsylvania Supreme Court in the recent case *Bruno v. Erie Insurance Company*, 106

A.3d at 60-68. Out of this history, two guiding principles with respect to the application of

the gist of the action doctrine can be distilled and are laid out by the Pennsylvania Supreme

Court in *Bruno*. First,

[i]f the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

*Id.* at 68 (internal citation omitted). Thus, the Pennsylvania Supreme Court set up a "duty-

based demarcation" for deciding whether or not the gist of the action doctrine bars a

particular tort claim, reaffirming this distinction "as the touchstone standard for ascertaining

the true gist or gravamen of a claim pled by a plaintiff in a civil complaint." *Id.* at 69.

The Pennsylvania Supreme Court in *Bruno* then went on to add an important

corollary to this framing of the gist of the action standard, setting out the second guiding

principle of the opinion. The highest court in the Commonwealth "has long recognized that

9

a party to a contract may be found liable in tort for negligently performing contractual

obligations and thereby causing injury or other harm to another contracting party." *Id.* at 69.

As a consequence,

> a negligence claim based on the actions of a contracting party in performing
> contractual obligations is not viewed as an action on the underlying contract
> itself, since it is not founded on the breach of any of the specific executory
> promises which comprise the contract. Instead, the contract is regarded
> merely as the vehicle, or mechanism, which established the relationship
> between the parties, during which the tort of negligence was committed.

*Id.* at 70.

Here, CSI argues that the doctrine bars i2M's claim for negligent performance of a

contract because it is based on CSI's failure to perform a contractual obligation. (Doc. 61 at

11-12). i2M's response, in full, is that "CSI's argument that i2M's negligent performance of

contract claim is barred by Pennsylvania's 'gist of the action' doctrine (CSI Br. at 10-13) was

considered and rejected by the Court in its Order of February 17, 2016. Under the law of

the case doctrine, that Order stands." (Doc. 71 at 4). i2M is wrong on its second point.

While this Court did reject CSI's argument regarding the gist of the action doctrine in CSI's

Motion to Dismiss, the Court specifically held "[w]hile discovery or trial might prove that

[CSI] cannot be held liable in tort, the Court cannot so determine at this early stage of the

litigation." *Crestwood Membranes, Inc. v. Constant Services, Inc.*, 2016 WL 659105, at *5

(M.D. Pa. 2016). This Court, therefore, left open the possibility that the gist of the action

doctrine may bar i2M's claim in a later stage of litigation.

10

Recognizing this, CSI argues that, in contrast with *Bruno*, "there is no fact supporting that CSI was negligent for acts or omissions occurring apart from . . . its contractual obligation . . . The contention of i2M is that CSI was negligent because it did not fulfill its contractual obligation to print inks on pool liners for i2M." (Doc. 75 at 11-12). It is true that if i2M alleged that CSI failed to print anything on the vinyl, i2M would be alleging that CSI failed to complete a contractual duty and thus could not maintain an action sounding in tort against CSI. This, however, is not the case here. Instead, as CSI has recognized, there is testimony in the record that it was CSI's printing practices that allegedly lead to the injury. (Doc. 57 at ¶ 82). i2M's claim is not that CSI did not print inks on pool liners for it; it was the manner in which CSI did so that i2M claims gave rise to its injury. Thus, it was not the failure to fulfill a contractual obligation that forms the basis of i2M's claim, but CSI's alleged negligent workmanship in performing the contractual obligation. This renders this case indistinguishable from *Zell v. Arnold*, 2 Pen. & W. 292 (Pa. 1830).

In *Bruno*, the Pennsylvania Supreme Court summarized *Zell* in the following manner:

In *Zell*, the plaintiff owned a particular piece of land and entered into a contract with the defendant—a millwright—to construct a clover mill and, also, to dig a channel in the bed of a stream running across the plaintiff's land, so that it would divert the stream's current to flow to the mill, and, additionally, would bring the elevation of the stream's waterflow level with the top of a dam across the stream. The defendant built the mill and dug a channel in the streambed; however, the manner in which the defendant constructed the channel inhibited the stream's water from flowing to the mill and, also, created a 16–inch grade between the bottom of the stream and the top of the dam.

*Bruno*, 106 A.3d at 62. On those facts, the *Zell* court held that "[t]he gist of an action on the case like the present, is not a failure to *perform*, but a failure to perform in a *workmanly manner*, which is a tort." *Zell*, 2 Pen. & W. at 294 (emphasis original). This holding was subsequently reaffirmed by the Pennsylvania Supreme Court in *Bruno*. 106 A.3d at 68-70.

Here, as in *Zell*, the contention is not that CSI failed to perform a contractual obligation; it is that CSI performed its contractual obligations in a deficient manner. Thus, the cause of action here arises not directly from a breach of a contractual obligation but from "an alleged breach of [CSI]'s separate 'collateral' duty to perform a contractual obligation with skill and diligence." *Id*. at 63. As such, the negligence claim is not barred by the gist of the action doctrine and this Court will deny CSI's Motion for Summary Judgment on this claim.

## C. Implied Warranty Claims

Lastly, CSI argues that i2M's implied warranty claims fail as a matter of law because CSI is not a "merchant" or a seller of "goods." (Doc. 61 at 13). The implied warranties of "merchantability and fitness for a particular purpose[ ] arise by operation of law under the Uniform Commercial Code (UCC), 13 Pa. C.S.A. §§ 2314, 2315, and serve to protect buyers from loss where goods purchased are below commercial standards or unfit for the buyer's purpose." *Turney Media Fuel, Inc. v. Toll Bros., Inc.*, 725 A.2d 836, 840 (Pa. Super. Ct. 1999). Specifically, Article 2 of the Pennsylvania UCC provides that "a warranty that the

goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." 13 Pa. C.S.A. § 2314(a). Additionally,

> [w]here the seller at the time of contracting has reason to know:
> (1) any particular purpose for which the goods are required; and
> (2) that the buyer is relying on the skill or judgment of the seller to select or furnish suitable goods;
> there is . . . an implied warranty that the goods shall be fit for such purpose.

13 Pa. C.S.A. § 2315. Thus, "[u]nder a warranty of fitness for a particular use, the seller warrants that the goods sold are suitable for the special purpose of the buyer, while a warranty of merchantability is that the goods are reasonably fit for the general purposes for which they are sold." *Pritchard v. Liggett & Myers Tobacco Co.*, 295 F.2d 292, 296 (3d Cir. 1961).

Both warranties are only implied in contracts governed by Article 2 of the Pennsylvania UCC. *See Turney Media Fuel, Inc.*, 725 A.2d at 840. "Article 2 of the UCC governs transactions involving products or 'goods,' thus before the protections of the warranties attach there must be a sale of goods." *Id.*; *see also Stephenson v. Greenberg*, 617 A.2d 364, 368 (Pa. Super. Ct. 1992). "'Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities . . . and things in action." 13 Pa. C.S. A. § 2105(a). "Under this definition, 'goods' must be '(1) a thing, (2) existing, and (3) movable . . . .'" *Gall by Gall v. Allegheny Cty. Health Dep't*, 555 A.2d 786, 789 (Pa. 1989) (alteration original) (quoting *Helvey v. Wabash Cty. REMC*, 278 N.E.2d 608,

610 (Ind. Ct. App. 1972)). "When the transaction involves predominantly the rendition of services, the fact that tangible movable goods may be involved in the performance of services does not bring the contract under the Code." *Whitmer v. Bell Tel. Co. of Pa.*, 522 A.2d 584, 587 (Pa. Super Ct. 1987).

Additionally, the implied warranty of merchantability is only implied in a contract when "the seller is a *merchant* with respect to goods of that kind." 13 Pa. C.S.A. § 2314(a). The Pennsylvania USS defines "merchant" as

> A person who:
>> (1) deals in goods of the kind; or
>> (2) otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.

13 Pa. C.S.A. § 2104.

CSI argues that it is neither a "merchant," nor a supplier of "goods," and therefore Article 2 of Pennsylvania's UCC does not apply and there is no implied warranty of merchantability or fitness for a particular purpose in its contracts with i2M. (Doc. 61 at 14-15). i2M's response, in full, is that "CSI's argument that i2M's implied warranty of merchantability/fitness claim fails because CSI is not a 'merchant' is a fact-intensive contention and is not subject to disposition on a motion for summary judgment." (Doc. 71 at 4).

14

There are several deficiencies with i2M's argument. First, i2M has offered no citation to any authority for its assertion that the determination of whether someone is a "merchant" cannot be decided as a matter of law on summary judgment. In fact, contrary to i2M's assertion, courts have previously found it appropriate to decide on summary judgment whether a party is a "merchant." *See, e.g., Gavula v. ARA Servs., Inc.*, 756 A.2d 17, 21 (Pa. Super. Ct. 2000) ("A person selling substantial corporate assets to another corporation therefore is not a 'merchant' for purposes of a warranty of merchantability.") Second, i2M does not offer any citation to facts in the record which indicate that CSI is a "merchant." Third, i2M's argument does not address CSI's second argument that CSI does not sell "goods."

Here, i2M has brought a cause of action based on breaches of implied warranties, not express warranties. (Doc. 1 at ¶¶ 40-44). Pennsylvania law, however, will only imply warranties of merchantability and fitness for a particular purpose into contracts if the contracts fall under the purview of Article 2 of Pennsylvania's UCC. *See Turney Media Fuel, Inc.*, 725 A.2d at 840. The undisputed facts, however, show that CSI provided services to i2M, not goods, and, therefore, the transactions are not governed by the UCC. Specifically, the undisputed facts show that CSI is a printing company that specializes in printing on materials such as pool liners. (Doc. 57 at ¶¶ 1-2). CSI does not manufacture any pool liners, but instead CSI's customers, such as i2M, provide CSI with the material to print on and CSI applies ink to that material. (*Id*. at ¶¶ 5, 16, 50, 90, 104).

15

i2M has not directed this Court to a single fact in the record from which this Court could infer that its contracts with CSI were for "goods" and not for printing services. Indeed, i2M's complaint even states that "CSI impliedly warranted to i2M that the *printing services* i2M ordered from CSI and paid for would be merchantable." (Doc. 1 at ¶ 41) (emphasis added). It goes on to state that "CSI breached its implied warranty of merchantability by *printing* i2M vinyl swimming pool liner film in a manner that has caused fading or seam separation problems." (*Id.* at ¶ 42) (emphasis added). As CSI has established that it is undisputed that it provided printing services to i2M, and i2M has not shown any disputes of fact concerning whether its contracts with CSI were for "goods" as that term is defined in the UCC, i2M's warranty claims fail as a matter of law.[5]

Accordingly, the Court will grant CSI's Motion for Summary Judgment as it pertains to i2M's warranty claims.[6]

## V. CONCLUSION

For the reasons stated above, the Court will adopt Magistrate Judge Carlson's Report and Recommendation in part, (Doc. 96), and grant in part and deny in part CSI's Motion for Summary Judgment. To be clear, although the Court is denying CSI's Motion for Summary Judgment in part, that denial is in spite of the wholly inadequate brief filed by i2M.

---

[5] Because the Court finds that summary judgment is appropriate on this basis, the Court need not address whether CSI was a "merchant" within the meaning of 13 Pa. C.S.A. § 2104.

[6] i2M attempted to brief the warranty issue in its objections to the R&R. (Doc. 99 at 10). Even if the Court were to assume that these arguments are not waived for failure to properly brief them in its original Brief in Opposition, they are of no merit. i2M still fails to direct the Court to any relevant facts in the record or any authority for its propositions concerning whether i2M and CSI's transaction involved "goods."

16

Instead, i2M's Brief in Opposition has only functioned to waste the Court's resources and disrespect the summary judgment process as envisioned by Federal Rule of Civil Procedure 56. A separate Order follows.

Robert D. Mariani
United States District Judge