# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CRESTWOOD MEMBRANES, INC., | : | |
| Plaintiff, | : | |
| v. | : | 3:15-CV-537 |
| | : | (JUDGE MARIANI) |
| CONSTANT SERVICES, INC., | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### I. INTRODUCTION

Presently before the Court is Plaintiff's Motion for an Adverse Inference Instruction. (Doc. 54). For the reasons that follow, the Court will deny the Motion. With respect to Plaintiff's arguments concerning evidence spoliation, however, the denial will be without prejudice to Plaintiff's right to renew its Motion at trial.

### II. BACKGROUND

On March 17, 2015, Plaintiff, Crestwood Membranes, Inc., d/b/a i2M ("i2M"), filed a Complaint against Defendant, Constant Services, Inc. ("CSI"). (Doc. 1). Prior to the lawsuit, the two parties had been in a business relationship whereby i2M supplied CSI with swimming pool liner vinyl, CSI printed patterns on the vinyl, and i2M sold the printed liners to third party customers. (*Id.*). i2M's Complaint alleged that CSI infringed on several copyrighted patterns owned by i2M. (*Id.*). Additionally, i2M claims that CSI's printing

practices caused the printed vinyl i2M sold to third party customers to separate at the seams and fade prematurely. (*Id.*).

At the close of discovery, i2M filed a Motion for Issuance of an Adverse Inference Instruction. (Doc. 54). After the parties fully briefed the Motion, the Court referred it, along with two pending motions for summary judgment, to Magistrate Judge Carlson. On November 15, 2016, Magistrate Judge Carlson issued an Order which denied i2M's Motion for Issuance of an Adverse Inference Instruction as premature. (Doc. 88). The denial, however, was without prejudice to i2M's right to renew the motion before this Court after the pending summary judgment motions had been resolved. (*Id.*).

On April 13, 2017, after this Court reviewed the two Report and Recommendations and issued rulings on the parties' summary judgment motions, i2M filed a motion seeking leave to renew its Motion for Issuance of an Adverse Inference Instruction. (Doc. 116). The Court subsequently granted i2M's Motion to Renew. (Doc. 161). As a result, the Court now turns to i2M's Motion for an Adverse Inference Instruction.

### III. DISCUSSION

Through the present Motion, i2M alleges that (1) CSI's corporate designee, Rosario Pepe, lied during two depositions, (2) CSI engaged in a pattern of discovery violations involving the late production of documents, and (3) CSI either wrongfully destroyed or withheld documents during discovery. (Doc. 55 at 2-10). As a result of these alleged wrongs, i2M argues that it is entitled to a jury instruction that (1) "CSI gave false testimony

and intentionally covered up and destroyed evidence of [sic] regarding CSI's responsibility for seam separation and fading problems experienced by customers on products printed by CSI," and (2) "i2M's vinyl is not responsible for the seam separation and fading problems experienced by i2M's customers on products printed by CSI." (Doc. 54 at 5).[1]

Turning first to i2M's allegation that Pepe gave false testimony, it is well established that this Court may impose sanctions on those who give knowingly false deposition testiomony. *See Weisberg v. Riverside Twp. Bd. of Educ.*, 272 F. App'x 170, 173 (3d Cir. 2008); *Derzack v. Cty. Of Allegheny*, 173 F.R.D. 400, 412-13 (W.D. Pa. 1996). i2M claims that Pepe testified falsely with respect to whether or not CSI's customers, other than i2M, ever complained to CSI about seam separation and fading. Specifically, i2M points to the following exchange that occurred at Pepe's first deposition as a source of false testimony:

> Q    Any of your other customers ever say to you that one of the problems associated with the wearing out of a cylinder is the ink fails to coheed and they have seam separation problems?
>
> A    No.
>
> Q    Did O'Sullivan ever bring that to your attention?

---

[1] In its reply brief, i2M requests for the first time that this Court also instruct the jury to "mak[e] a finding that CSI intentionally infringed i2M's copyright." (Doc. 68 at 4). Nevertheless, "[a] reply brief is not the appropriate forum in which to raise new issues and the court need not address issues raised for the first time therein." *Bell v. Lackawanna Cty.*, 892 F. Supp. 2d 647, 688 n.41 (M.D. Pa. 2012); *see also United States v. Martin*, 454 F. Supp. 2d 278, 281 n. 3 (E.D. Pa. 2006) ("A reply brief is intended only to provide an opportunity to respond to the arguments raised in the response brief; it is not intended as a forum to raise new issues."). The Court realizes that the events on which i2M rely for this new argument occurred after i2M had filed its original motion. If that is the case, however, i2M should have filed a separate motion to address its new arguments. Raising factual allegations and arguments for the first time in a reply brief deprived CSI of an opportunity to respond. Thus, the Court will not address i2M's arguments with respect to its copyright claims.

A   No.

Q   Did O'Sullivan ever complain about experiencing or its customers experiencing a seam separation problem?

A   If they did, they dealt with it. I never – never got like I said in a prior question like that, if a – if a conversation or dialogue went beyond five minutes or two minutes on a – it was just never a conversation, a topic of conversation. They always dealt with it. They always dealt with it and that's just the way it was.

(Dep. of Rosario Pepe, November 12, 2015, Doc. 54-3 at 65-66).

i2M claims that this testimony is contradicted by several emails it subpoenaed from one of CSI's customers, O'Sullivan Films, in which employees of O'Sullivan discuss vinyl seam separation problems with Pepe. Pepe was later questioned about those emails and then asked if he stood by the above testimony:

Q   . . . Russ, do you stand by that testimony?

A   Yeah.

Q   How can you reconcile that testimony with the two or three hours that we've spent this afternoon going through 50 or 60 e-mails back and forth between you and O'Sullivan about [O'Sullivan's customer] Merlin having at least 8 seam separation failures?

> MR. BOLAND: Well, I'll object to the form of the question because he said he didn't – he wasn't aware of that, 8 seam separations. But you can answer the question with that caveat.

A   It was an internal R&D process. It wasn't about Merlin. It wasn't about – it was a process, an internal process. It had nothing to do with anything particular. They kept that to themselves, and they just wanted now to work through me as their printer with whatever – again I'm the contract printer, I'm doing what they're asking me to do.

4

> Q   Russ, I understand what you're saying. But you said here, it was never a topic of conversation. It was never a topic – are you saying, again, here today that it was never a topic of conversation whether a customer of O'Sullivan ever experienced a seam separation problem, that was never a topic of conversation between you and O'Sullivan?
>
> A   Not – not to the – not to the level that you want me to say it is, no.
>
> Q   Okay. And if this comes up at trial or before a hearing before the judge that's what you intend to testify to?
>
> A   It's the truth, I have to.

(Dep. of Rosario Pepe, April 20, 2016, Doc. 54-3 at 17).[2]

i2M argues that the testimony Pepe gave on November 12, 2015, and April 20, 2016, is "dishonest as a matter of law" and should not be submitted to the jury. (Doc. 55 at 2-6; Doc. 68 at 3-4). Even assuming that this type of sanction would ever be warranted—a proposition that this Court is not convinced of based upon the cases i2M cites—the Court does not see this as a case where it can determine, *as a matter of law*, that a witness is being dishonest. Indeed, upon a fair reading of both the emails and the above testimony, a reasonable jury could conclude that Pepe considered his email conversations about seam separation with employees of O'Sullivan to be part of the research and development process and thus testified that he never received any "complaints" about seam separation from O'Sullivan employees. Further, when presented with the emails and questioned about

---

[2] i2M cites to other parts of Pepe's April 20, 2016, deposition testimony, but neglected to provide the Court with a copy of those portions of the transcript. In fact, it appears that the Pepe deposition transcript that i2M included as an exhibit to its Motion is missing every other page of the document. (Doc. 54-3 at 1-18).

5

whether seam separation was ever a topic of conversation with O'Sullivan employees, Pepe testified "not to the level that you want me to say it is, no." (Dep. of Rosario Pepe, April 20, 2016, Doc. 54-3 at 17).

It is up to a jury, and not this Court, to determine if Pepe is a credible witness. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). If this testimony is offered at trial, i2M will be free to cross-examine Pepe with the emails between him and the O'Sullivan employees and to argue i2M's interpretation of the evidence during closing arguments. Nevertheless, the fact that i2M believes that Pepe was being dishonest based upon its interpretation of Pepe's testimony does not give this Court the right to remove from the jury its functions of assessing the credibility of witnesses, weighing the evidence, and drawing inferences from the facts. Such action would, in essence, be an abrogation of CSI's right to the jury trial it demanded, (Doc. 9). *See* U.S. CONST. amend. VII; FED. R. CIV. P. 38.

Turning to i2M's second argument—that CSI engaged in a pattern of discovery violations involving the late production of documents—i2M fails to establish why these violations, assuming they occurred, entitles i2M to the adverse inference instruction it requested. The purposes behind imposing sanctions for a party's discovery abuses "are to: (1) penalize the culpable party or attorney; (2) deter others from engaging in similar conduct; (3) compensate the court and other parties for the expense caused by the abusive conduct; and (4) compel discovery and disclosure." *Wachtel v. Health Net, Inc.*, 239 F.R.D.

81, 99 (D.N.J. 2006). Further, in imposing a sanction, "a district court must . . . ensure that the sanction is tailored to address the harm identified." *Republic of Phil. v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 (3d Cir. 1994).

Here, the proposed jury instruction is in no way related to the claimed discovery violation. i2M's allegation concerns CSI's untimely production of documents. Its proposed jury instruction, however, would direct the jury to make findings in its favor with respect to key issues in this litigation. This would, in effect, create a windfall for i2M as a result of CSI's alleged late production of documents. A result such as this is in no way proportional or tailored to the claimed discovery violation.

Finally, i2M claims that it is entitled to an adverse instruction because CSI either wrongfully destroyed or withheld documents during discovery. The general principles regarding inferences to be drawn from the loss or destruction of one or more documents are well-established in the Third Circuit. *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 334 (3d Cir. 1995). "When the contents of a document are relevant to an issue in a case, the trier of fact generally may receive the fact of the document's nonproduction or destruction as evidence that the party that has prevented production did so out of the well-founded fear that the contents would harm him." *Id.* Therefore, "[s]poliation occurs where: the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party." *Bull v. United Parcel*

*Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012). The party asserting that spoliation has occurred has the burden of establishing these elements. *See Gentex Corp. v. Sutter*, 827 F. Supp. 2d 384, 390 (M.D. Pa. 2011).

i2M argues that spoliation occurred in this case because CSI either withheld or destroyed emails between employees of O'Sullivan Films and Pepe regarding seam separation. i2M points to several pieces of evidence in the record to support its argument. First, in response to i2M's document production request that sought "[a]ll documents related to complaints, concerns, or issued [sic] raised by Defendant's customers or others regarding the problem of seam separation with products printed by Defendant," CSI responded that it had no responsive documents. (Doc. 54-3 at 70). Second, when i2M issued a subpoena to O'Sullivan Films, they produced several emails—some of which were created after this litigation began—between employees of O'Sullivan and Pepe which concerned seam separation. (Id. at 19-53). Third, when confronted with the emails produced by O'Sullivan, Pepe testified that CSI was no longer in possession of any of those emails.[3] (Dep. of Rosario Pepe, April 20, 2016, Doc. 54-3 at 16).

The mere fact that CSI maintains that it is no longer in possession of several emails that have been shown to exist is insufficient to show that spoliation occurred. Indeed,

---

[3] i2M also argues that, because Pepe copied multiple other CSI employees on the contested emails, it is impossible to believe that CSI did not have a single copy of those emails left in its possession. (Doc. 68 at 2). Accordingly, i2M points to this portion of Pepe's deposition as further evidence of Pepe giving dishonest testimony. i2M, however, has come forth with no evidence that CSI still had these emails in its possession at the time of Pepe's depositions. As such, the truthfulness of this testimony is a question for the jury.

8

although Courts in this circuit are not in agreement as to what level of intent is necessary for spoliation to be attributed to a party, see Mosaid Techs. Inc. v. Samsung Elecs. Co., 348 F. Supp. 2d 332, 337 (D.N.J. 2004) (noting that "[s]ome courts in the Third Circuit have construed 'actual suppression' to mean that the evidence must be intentionally or knowingly destroyed or withheld, . . . [while o]thers have used a more flexible approach that defies being labeled as requiring intentional or knowing destruction"), it is clear that an adverse inference instruction is not appropriate in all cases in which a party fails to produce evidence, see Brewer, 72 F.3d at 334 ("No unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for"). Here, there is no indication in the record of the circumstances under which the relevant emails were not preserved.[4] As such, the Court cannot properly evaluate whether an adverse instruction is appropriate in this case. Accordingly, the Court will deny i2M's request for an adverse inference instruction on the basis of spoliation, but allow i2M to renew its request at trial, should the evidence adduced at trial demonstrate that the elements necessary to show spoliation have been established.

---

[4] i2M puts forth several arguments that rely on portions of Pepe's deposition testimony that i2M did not include with its Motion. For example, i2M appears to argue that Pepe was negligent in allowing spoliation to occur because Pepe testified that he never instructed anyone at CSI to preserve any documents after i2M's lawsuit was filed. (Doc. 55 at 9). i2M, however, failed to attach this part of Pepe's deposition testimony to its Motion or otherwise indicate where it could be found in the record. Thus, the Court is unable to evaluate whether this argument has merit. Accordingly, the Court has disregarded i2M's arguments which rely on evidence which i2M did provide to the Court.

9

## IV. CONCLUSION

For the foregoing reasons, the Court will deny i2M's Motion for an Adverse Inference Instruction with the caveat that i2M may renew its spoliation arguments at trial as explained herein. A separate Order follows.

Robert D. Mariani
United States District Judge